UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                    3:09-CR-446

GEORGE L. SIMMONDS,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Defendant George Simmonds was indicted on three counts of making false statements to the United States Probation Office ("USPO") in violation of 18 U.S.C. § 1001(a)(3).  Presently before the Court is Defendant's motion to dismiss the Indictment and to suppress certain statements.

**I.**    **FACTS**

In January 1999, Defendant was convicted in the Eastern District of Missouri of violating 18 U.S.C. § 2423(b) (Traveling in Interstate Commerce for the Purpose of Engage in a Sexual Act with a Person Under the Age of Eighteen).  He was sentenced to 18 months imprisonment and three years of supervised release.  Defendant was released to supervision in Binghamton, New York.  As part of his supervision, Defendant was to avoid direct contact with minors.

Upon being released from prison in August 2008, Defendant went to reside with his brother and sister-in-law at 827 Harvard Street, Endicott, New York.  On or about September 5, 2008, the USPO notified Defendant that he would not be approved to reside at 827

Harvard Street because a minor child resided there and because there was unmonitored

computer access. Shortly thereafter, on or about September 8, 2008, Defendant notified the

USPO that he established residency at 106 Henry Street, Binghamton, New York. In

October 2008, the terms and conditions of Defendant's supervised release were modified.

Among other things, Defendant was required to submit monthly reports, he had restrictions

on access to minors, and he also had restrictions on the use of computers.[1]

Thereafter, Defendant was charged and convicted with violating the terms of his

conditions of supervised release. Specifically, Defendant was charged with being at 827

Harvard Street and having contact with his minor niece in violation of the USPO's directives.

Defendant also admitted to using a computer at 827 Harvard Street without the approval of

the USPO. As a result, on November 26, 2008, this Court revoked Defendant's term of

supervised release and sentenced Defendant to time served and thirty-five months

supervised release. Following his incarceration, Defendant returned to reside at 106 Henry

St.

The USPO learned that Defendant was accessing and using computers outside the

scope of his terms of supervised release and without the prior approval of the USPO. On or

_____

[1] Among other things, Defendant's conditions of supervised release included the following:

You shall report to the probation officer as directed by the Court or probation officer, and shall submit a truthful and complete written report within the first five days of each month. . . .

You shall not have any direct contact with a person under the age of 18 unless it is supervised by a person approved of by the probation officer. . . .

You shall not use or possess any computer or any other device with online capabilities, at any location, except at your place of employment, unless you participate in the Computer Restriction and Monitoring Program. . . .

about May 12, 2009, the probation officer contacted an FBI agent concerning Defendant. The USPO inquired of the FBI agent how to obtain records from Yahoo. The USPO also contacted and shared information with the United States Attorneys' Office ("USAO"). The USAO commenced a criminal investigation of Defendant, including issuing subpoenas to various internet service providers.

Information received from an internet service provider revealed that Defendant created an e-mail account; that he accessed the e-mail account from unauthorized computers and without approval of the USPO; that Defendant accessed the account from a library in Binghamton, New York; and that Defendant forwarded emails to a computer at 827 Harvard Street.

The USPO discussed obtaining a search warrant for the 827 Harvard Street residence with the USAO. The USAO requested that the USPO prepare an affidavit supporting the warrant application, which it did. The USAO then prepared and drafted the search warrant for the 827 Harvard Street residence and the computer located therein.

On August 4, 2009, an Assistant United States Attorney, together with a probation officer, appeared before this Court and applied for a search warrant. This Court observed the probation officer sign the affidavit in support of the warrant. Upon review of the supporting materials, the Court issued the warrant.

The warrant was executed on August 5, 2009 at 827 Harvard Street. The warrant was executed by members of the USPO and four detectives/investigators from the Broome County Sheriff's Office. The search was conducted and the computer seized. The USAO was briefed on the results of the search. The computer was delivered to the Broome County Security Division for forensic analysis.

On that same day, Defendant was located by members of the USPO.  Defendant was handcuffed and transported to the USPO where he was interviewed by members of the USPO.  Thereafter, Defendant was arrested on a petition for violating the terms of his supervised release.  On August 6, 2009, the USAO prepared a felony complaint and filed criminal charges against Defendant.  On August 18, 2009, Defendant was indicted on three counts of Making False Statements to an Agency of the United States.

Presently before the Court is Defendants' motion to dismiss the indictment and suppress evidence.

## II.    DISCUSSION

### a.    Whether The USPO Exceeded Its Statutory Authority or Violated the Separation of Powers

Defendant moves to dismiss the Indictment on the ground that the USPO exceeded its authority in investigating Defendant for new criminal conduct, providing an affidavit in support of the search warrant, assisting in the execution of the search warrant, and filing a criminal complaint.

The duties of a probation officer are set forth in 18 U.S.C. § 3603.  Those duties include "keep[ing] informed, to the degree required by the conditions specified by the sentencing court, as to the conduct . . . of a probationer or a person on supervised release. . .," and "keep[ing] informed concerning the conduct, condition, and compliance with any condition of probation. . . ."  18 U.S.C. §§ 3603(2), (7).  To fulfill these duties, the probation officer necessarily serves in an investigative role.  See United States v. Davis, 151 F.3d 1304, 1306 (10th Cir. 1998) (noting that the probation officer serves as an investigative and supervisory arm of the court); see also Pennsylvania Bd. of Probation and Parole v. Scott,

118 S. Ct. 2014, 2025 (1998) ("Parole officers wear several hats; while they are indeed the parolees' counselors and social workers, they also 'often serve as both prosecutors and law enforcement officials in their relationship with probationers and parolees.'") (quoting N. Cohen & J. Gobert, Law of Probation and Parole § 11.04, p. 533 (1983)).

In this case, all investigative activities by the USPO related to whether Defendant was complying with the conditions of his supervised release. This is within the statutory duties of a probation officer. Specifically, the USPO investigated whether Defendant was submitting truthful reports and whether he was accessing computers in violation of the terms of his supervised release. Indeed, Defendant admits in his reply memorandum of law that "Mr. Simmonds's conduct in this case was . . . a violation of his terms and conditions of supervised release." Reply Mem. at 1. Defendant's conduct resulted in a petition alleging that Defendant violated the conditions of his release being filed with the Court. That the information obtained by the USPO also supported new criminal charges does not bring the USPO's actions outside the scope of its statutory duties.

The fact that the probation officer may have sought the assistance of the FBI or the USAO or reported the conduct to the USAO does not change the result. The USAO is permitted to petition the Court for revocation of a defendant's supervised release. United States v. Bermudez-Plaza, 221 F.3d 231, 234 (1st Cir. 2000) ("[R]evocation hearings are not criminal proceedings and neither the Attorney General nor any other officer is solely responsible for their initiation."); see also United States v. Mejia-Sanchez, 172 F.3d 1172, 1175 (9th Cir. 1999); United States v. Davis, 151 F.3d 1304, 1307-08 (10th Cir. 1998). Given this authority of the USAO, it is not unreasonable to expect probation officers, as part of their official duties, to share information with the USAO to prepare revocation proceedings.

Indeed, there is a statutory basis for a probation officer to report a probationer's conduct to the USAO.  Section 3603(8)(B) requires a probation officer to "immediately report any violation of the conditions of release to the court and the Attorney General or his designee." See Mejia-Sanchez, 172 F.3d at 1174.   Whether the USAO decides to use that same information to commence criminal proceedings is within the discretion of the USAO.  See Davis, 151 F.3d at 1307 ("[T]he U.S. Attorney retains discretion to file new criminal charges against the defendant arising from the defendant's violation of conditions of release which was criminal in nature. . . .").  Accordingly, the Court finds that the USPO did not exceed its statutory authority.

For similar reasons, the Court also finds that the USPO did not exceed its constitutional authority.  Defendant contends that prosecuting crimes is within the sole province of the executive branch, that it outside the scope of the judiciary to institute new criminal proceedings, and the instant matter blurs the roles of each branch because "if the probationer feared that information candidly shared with Probation was going to form the basis of a separate criminal prosecution, the probationer would have no incentive to honestly participate in his own recovery. . . . [and] limiting criminal investigations and the initiation of criminal proceedings to the executive assures that the constitutional rights of a probationer . . . are guarded through the well-established rules of criminal procedure. . . ."

"While 'the separation of governmental power into three coordinate branches is essential to the preservation of liberty,' . . .  the Supreme Court has advised that the separation of powers doctrine does not support 'the notion that the three Branches must be entirely separate.'" United States v. Sczubelek, 402 F.3d 175, 187 (3d Cir. 2005) (quoting Mistretta v. United States, 488 U.S. 361, 380 (1989)).  Thus, assuming, *arguendo*, that the

USPO acted beyond its authority, "it does not necessarily follow that there is a separation of powers violation.  There would also have to be an encroachment on the Executive Branch. . . ."  Sczubelek, 402 F.3d at 189; see also Mistretta, 488 U.S. at 381.  The Court does not find any such encroachment here.

The USPO's statutory duties of keeping informed of whether a probationer is complying with the conditions of release necessarily overlap some law enforcement duties. That the results of the USPO's duties may have dual uses (*i.e.* forming the basis for a revocation of supervised release and the initiation of new criminal charges) does not run afoul of the separation of powers.  In this case, the undisputed evidence is that the USAO was involved in the criminal investigation from an early stage.  See Lovric Aff. at ¶ 3 (noting that the USAO commenced a federal criminal investigation and issued subpoenas to various internet service companies).  The record evidence is that the United States Attorney: (1) conferred with the USPO concerning obtaining a search warrant; (2) prepared the warrant application based on information obtained from the USPO;[2] (3) presented the warrant to this Court; (4) made the decision to file new criminal charges; (5) made the decision as to which criminal charges to pursue, see Gov't Mem. of Law at 19; (6) prepared the felony complaint, see Lovric Aff. at ¶ 23; (7) filed the criminal charges; (8) presented the matter to a grand jury; and (9) continues to prosecute the charges against Defendant.  The probation officer has no role in how the information submitted to the USAO is used by it.  See United States v. Hook, 471 F.3d 766, 777 (7th Cir. 2006).  Inasmuch as the Executive Branch has been involved

---

[2] As previously noted, the USPO was permitted to investigate Defendant and obtain such information as part of its statutory duties to keep informed of Defendant's conduct and whether he is complying with the terms and conditions of his release.  See 18 U.S.C. §§ 3603(2), (7).

from an early stage and has made the critical determinations whether, and how, to proceed with new criminal charges against Defendant, the Court finds no encroachment that violated the separation of powers doctrine.  Nothing the USPO did interfered with the Executive Branch's ability to make law enforcement decisions or perform law enforcement functions. See Sczubelek, 402 F.3d at 189.

> **b.    Whether the Evidence is Legally Insufficient to Support a Charge of Violating 18 U.S.C. § 1001(1)(3).**

Defendant next argues that the Indictment must be dismissed because the evidence is legally insufficient to establish that Defendant's statements influenced the probation officer.  The Government responds that whether the "materiality" element is met is a question of fact for the jury.

Defendant is charged with violating 18 U.S.C. § 1001(a)(3).  That statute makes it a crime to knowingly and willfully make or use any false writing or document knowing the same to contain a materially false, fictitious, or fraudulent statement or entry.  Id.  To show that the statements were "material" requires proof that they have "a natural tendency to influence, or [were] capable of influencing, the decision of the decisionmaking body to which [they were] addressed."  Kungys v. United States, 485 U.S. 759, 770 (1988) (internal quotation and citation omitted); see also United States v. Gaudin, 515 U.S. 506, 509 (1995).  In Gaudin, the Supreme Court stated that:

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely history fact: (a) "what statement was made?" and (b) "what decision was the agency trying to make?"  The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality (quoted above) to these historical facts.

Gaudin, 515 U.S. at 512.

Here, the issue is whether certain statements made by Defendant on his reports to the USPO violated § 1001(a)(3); that is, whether Defendant knowingly made a materially false statement to the probation officer. Using the Supreme Court's formulation in <u>Gaudin</u>, the initial inquiry is what statement was made. Defendant submitted various reports stating that he had not accessed a computer or the Internet via unmonitored or unapproved computers. The second question is what decision the agency was trying to make. Although the government has not specifically addressed this question, it is reasonable to conclude that the USPO was determining: (1) whether Defendant was complying with the conditions of his release; (2) whether to further investigate whether Defendant was complying with the conditions of his release; (3) whether to report to the Court that Defendant was violating the terms of his supervised release; and/or (4) whether to petition the Court to revoke or modify Defendant's supervised release. That leaves the third question - whether Defendant's statements were material to USPO's determination.

The Supreme Court has held that the determination of materiality is for the trier of fact. <u>Gaudin</u>, 515 U.S. 506. A jury could reasonably conclude that Defendant's statements could have influenced the probation officer to believe that Defendant was complying with the applicable computer restrictions and, thus, foregone investigating whether he was complying with those conditions, reporting any violations to the Court, and/or petitioning for revocation or modification. The statute does not require that the probation officer actually be deceived or influenced by Defendant's statement. Moreover, it is irrelevant that, before Defendant submitted the reports, the probation officer already possessed information that Defendant had improperly accessed a computer. All that the statute requires is that the statement have

a tendency to influence, or the capability of influencing, the probation officer's conduct.  This is a factual issue for the jury.

      **c.**    **Standing to Challenge the Search Warrant**

      Defendant moves to suppress the results of the search warrant of the residence at 827 Harvard Street because the warrant violated Fed. R. Crim. P. 41 and the Fourth Amendment.  The government responds that, because the warrant was executed on the residence of Defendant's brother, Defendant does not have standing the challenge the warrant or assert a Fourth Amendment violation.

      "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."  Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421 (1978).  The defendant "bears the burden of proving . . . that he had a legitimate expectation of privacy."  Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556 (1980).  The Defendant may satisfy this burden by "showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner."  United States v. Villegas, 899 F.2d 1324, 1333 (2d Cir. 1990); see United States v. Watson, 404 F.3d 163, 166 (2d Cir. 2005).

      Here, Defendant has provided no information suggesting that he has a legitimate expectation of privacy at the searched premises (827 Harvard Street).  The undisputed evidence before the Court is that Defendant's brother and sister-in-law resided at 827 Harvard Street.  Although Defendant went to live at 827 Harvard Street upon being released from prison, he was advised by the USPO in September 2008 that he could not reside there.  Accordingly, in September 2008, Defendant moved to 106 Henry Street in Binghamton, New

York where he resided at the time the warrant was executed.  There is no evidence before the Court that, as of August 5, 2009, Defendant resided at 827 Harvard Street, was an overnight guest there, or otherwise had a legitimate expectation of privacy there. See Watson, 404 F.3d at 166.  Accordingly, Defendant has no standing to suppress the search warrant as violating Rule 41 or the Fourth Amendment.

### d. Rule 41

Defendant contends that the subject search warrant was issued in violation of Fed. R. Crim. P. 41 because the USPO is not a proper applicant for a warrant (thereby violating Rule 41(b)) and is not authorized to execute a warrant (thereby violating Rule 41(e)). Assuming, *arguendo,* that Defendant has standing to raise these claims, they must be rejected.

### 1. Rule 41(b)

Rule 41(b) provides that a warrant may be requested by a federal law enforcement officer or an attorney for the government.  The evidence in this case is that, although the supporting affidavit was prepared by the probation officer that had the information supporting the finding of probable cause, the application was prepared under the supervision of the USAO.  Further, the warrant was presented to the Court through an Assistant United States Attorney who qualifies as an attorney for the government within the meaning of Rule 41.  The USAO's supervision of the preparation of the supporting affidavit together with the facts that the USAO prepared the warrant and sealing order and accompanied the probation officer to obtain the warrant satisfies Rule 41(b).  See United States v. Luk, 859 F.2d 667, 673 (9th Cir. 1988); United States v. Sangineto-Miranda, 859 F.2d 1501, 15141 (6th Cir. 1988); United States v. Schuster, 777 F.2d 264 (5th Cir. 1985), vacated due to the death of defendant, 778

F.2d 1132 (1985); United States v. Gehl, 1994 WL 371329, at *8 (N.D.N.Y. 1994); United States v. Massey, 687 F.2d 1348 (10th Cir. 1982); United States v. Burka, 700 F. Supp. 825, 831 (E.D. Pa. 1988).  Accordingly, there was no violation of Rule 41(b) warranting suppression.

### 2.        Rule 41(e)

Rule 41(e) requires that the warrant be issued "to an officer authorized to execute it."  Here, the warrant was addressed to "any authorized law enforcement officer."  Defendant argues that Rule 41(e) does not permit a Probation Officer to execute a search warrant relating to the seizure of evidence of separate criminal conduct.

"[A] search warrant may be executed by (1) the person to whom the warrant is directed; (2) any officer authorized by law to execute search warrants; or (3) some other person who is aiding a person under (1) or (2) who is present and acting in the execution of the warrant."  3A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §671; Wilson v. Layne, 119 S. Ct. 1692, 1698 (1999) (presence of third parties may be permissible when they directly aid in the execution of the warrant).  Here, the search warrant was executed by the USPO and the Broome County Sheriff's Office.  Defendant does not argue that the Broome County Sheriff's Office was not authorized to execute the warrant.  Thus, if the USPO provided direct aid in the execution of the warrant, there is no violation of Rule 41(e).  The Court finds that, under the facts of this case, the USPO did provide direct aid and, thus, the requirements of Rule 41(e) were satisfied.

### 3.        Neutral and Detached Magistrate

Defendant next contends that because "[a]ll aspect of the warrant were controlled by the judiciary" the warrant was not issued by a neutral and detached magistrate.  There is

no dispute that the USPO played a significant role in learning of and investigating Defendants' conduct.  This was entirely within the province of the USPO's duties and obligations in monitoring Defendant's compliance with the terms of his supervised release. The USPO was responsible for supervising Defendant and identifying any violations of the terms and conditions of his supervised release.  The conduct identified by the USPO reasonably supported charges that he violated the terms and conditions of his supervised release.  That the same conduct may also support separate criminal charges does not invalidate the USPO's actions.   The USPO referred the criminal matter to the USAO, which commenced a criminal investigation.  It was the USAO that applied for a search warrant, which was reviewed and approved of by this Court.  It is the USAO that obtained an Indictment against Defendant.  It is the USAO that is prosecuting the criminal charges. Accordingly, there is an insufficient factual basis for Defendant's claim that "[a]ll aspects of the warrant were controlled by the judiciary."

      **e.**    **Motion to Suppress**

Lastly, Defendant moves to suppress any statements he made to the USPO on August 5, 2009.  The Government responds that it does not seek or intend to introduce any statements made by Defendant to the USPO during the August 5, 2009 interview prior to his arrest and, therefore, this issue is moot.  Defendant did not respond to this argument, apparently conceding that the issue is moot.  Accordingly, the Court declines to rule on the issue.

**III.     CONCLUSION**

For the foregoing reasons, Defendant's motion is DENIED IN ITS ENTIRETY.  The government has cross-moved for reciprocal discovery.  Defendant shall comply with his Rule 16 obligations forthwith.


IT IS SO ORDERED.

Dated:   November 9, 2009

Thomas J. McAvoy
Senior, U.S. District Judge